IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| United States, | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | No. 21 CR 499 |
|  | ) |  |
| Dong Joon Kim, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

Memorandum Opinion and Order

Defendant Dong Joon Kim faces charges in this case concerning his operation of a money transmitting business and reporting requirements of domestic financial institutions. Kim came onto federal agents' radar while they were investigating money laundering networks used by drug traffickers. As part of the investigation into Kim, officials obtained warrants to search his apartment and cellphone. Kim now challenges these warrants and seeks suppression of the evidence obtained from the searches they permitted. He also moves to suppress electronic messages associated with his account on a cryptocurrency trading platform. For the reasons explained below, I deny Kim's motions to suppress and request for a *Franks* hearing.[1]

---

[1] Kim also moved to dismiss count 6 and counts 7–33 of the superseding indictment. ECF 74, 75. But in light of the second superseding indictment returned on October 16, 2023, Kim says these motions are moot. Accordingly, these motions are denied.

I.

A.

Kim argues that the warrant used to search his apartment was obtained in violation of *Franks v. Delaware*, 438 U.S. 154 (1978), and that the evidence obtained during that search must therefore be suppressed. Under *Franks*, a defendant is entitled to an evidentiary hearing on the sufficiency of a search warrant if he makes a "substantial preliminary showing" that (1) the affidavit used to secure the warrant "contained a materially false statement" or omission, (2) the affiant made these false statements or omissions "with deliberate or reckless disregard for the truth," and (3) the false statements or omissions were "necessary for the finding of probable cause." *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013) (citing *Franks*, 438 U.S. at 155–56). If a *Franks* hearing is held, the defendant must then prove these elements by a preponderance of the evidence. *Id.*

Kim targets several aspects of the affidavit used to obtain the warrant to search his apartment.[2] He maintains, for example, that the government only learned about multiple roller suitcases and a money counter in his apartment when they unlawfully "escorted" his girlfriend through the apartment after she declined

---

[2] Citations to the affidavit are to the version submitted by the government, ECF 83-1, since that version contains fewer redactions.

2

consent to search it.³ *See* Rivera Aff., ECF 83-1 ¶¶ 13, 37, 39 (identifying roller suitcases and money counter seen in apartment). Furthermore, he asserts that the affidavit misrepresents the contents of a conversation between him and an undercover agent on October 16, 2020, an uncertified transcript of which he attached to his motion, ECF 76-4. *See* Rivera Aff. ¶¶ 12, 31, 39 (discussing that conversation). While the government frames this conversation as suggesting Kim's regular involvement with illegal money couriering, Kim insists that he was merely describing his lawful cryptocurrency trading business and that the only cash deliveries he discussed were those with another undercover agent. He also maintains that he made several exculpatory comments during that conversation that were omitted from the affidavit. Without the portions of the affidavit suggesting that a search of the apartment would reveal multiple roller suitcases used to deliver cash and a money counter, and that Kim had made incriminating statements to an undercover agent on October 16, 2020, Kim argues

---

³ At one point in the affidavit, Agent Rivera notes that officials observed "one rolling suitcase and a money counter" in plain view from the doorway of Kim's apartment, *see* Rivera Aff., ECF 83-1 ¶ 13, while at another she notes officials could see "multiple roller suitcases and a money counter" from that position, *id.* ¶ 37. *See also id.* ¶ 39 (referencing "roller suitcases" in the apartment). The government maintains that the discrepancy in the number of viewable suitcases was a mistake, and that only one suitcase could be seen from the apartment's threshold.

that there would be no basis for probable cause justifying the warrant.

Even without these portions of the affidavit, however, there was probable cause to issue the warrant. Since September 2019, the government had been investigating money laundering networks associated with drug trafficking. On two occasions--October 5 and October 16, 2020--the government observed Kim meet with undercover agents to transfer cash in amounts of $50,000 and $100,000, respectively. *See id.* ¶¶ 22, 25 n.7 (October 5, 2020 meeting); *id.* ¶ 30 (October 16, 2020 meeting). Based on the background investigation, the cash transferred on these occasions constituted suspected narcotics proceeds. Those meetings and an attempted third meeting were coordinated between one of the government's confidential sources and Ether, an individual who federal agents had reason to believe was involved with the criminal activity under investigation. *See id.* ¶¶ 15-19, 23-24 (coordinating October 5, 2020 meeting); *id.* ¶ 28 (October 16, 2020 meeting); *id.* ¶ 32 (October 22, 2020 meeting). On October 22, 2020, the date of the attempted third cash transfer--this time of $150,000--the government saw Kim leave his residence with a brown paper bag. *Id.* ¶¶ 33-35. Agents arrested Kim and discovered, consistent with the prior two transfers, that the bag he was carrying contained cash in the amount discussed by Ether and the government's confidential source. *Id.* ¶ 36 & n.10. Based on her years of experience

4

investigating drug trafficking organizations and the facts known to law enforcement, Agent Rivera states in the affidavit that she believed relevant evidence would be found in Kim's apartment. *Id.* ¶ 39. Taken together, the magistrate judge would have been on firm ground issuing the warrant even without information about roller suitcases, a money counter, or the October 16, 2020 discussion between Kim and an undercover agent.

Contrary to Kim's argument, this conclusion does not require endorsement of a categorical rule that there is always probable cause to search a purported drug trafficker's home in drug trafficking cases. Nor is this a case where the only basis for probable cause is an agent's opinion. Rather, the culmination of Kim's meetings to hand off large amounts of cash; agents' observations of Kim leaving his residence with what they reasonably suspected was another bag of cash; and Agent Rivera's experience-informed opinion that evidence would be found in Kim's apartment[4] --all against the backdrop of a monthslong investigation into money laundering networks associated with drug trafficking--supplies enough to make a "practical, common-sense determination that there is a fair probability that contraband or evidence of a crime" would be found in the apartment. *United States v. Mullins*, 803 F.3d 858,

---

[4] While Kim is right that the opinion of officers alone is insufficient to justify a search warrant, an experienced affiant's opinion can factor into the probable cause determination. *See United States v. Zamudio*, 909 F.3d 172, 176 (7th Cir. 2018).

861 (7th Cir. 2015) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010) (observing that because "often, nothing will *directly* indicate that evidence of a crime will be found in a particular place[,] . . . an affidavit need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place." (emphasis in original)).

Because Kim has failed to make a substantial preliminary showing that the portions of the affidavit to which he objects were necessary to establish probable cause for the apartment search, he is not entitled to a *Franks* hearing and his motion to suppress evidence obtained during that search is denied. *See United States v. Santiago*, 905 F.3d 1013, 1025 (7th Cir. 2018) (holding defendant not entitled to *Franks* hearing "if probable cause to issue the warrant would still exist even if the false statement or material omission were corrected" (citation and internal quotation marks omitted)).

B.

In his next motion to suppress, Kim argues that evidence obtained from a search of his cellphone--a white iPhone 11--must be suppressed because the warrant allowing that search was

6

overbroad and lacked particularity.[5] "The particularity requirement 'ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause.'" *United States v. Vizcarra-Millan*, 15 F.4th 473, 502 (7th Cir. 2021) (quoting *United States v. Vitek Supply Corp.*, 144 F.3d 476, 481 (7th Cir. 1998)). A warrant is overbroad if it "allow[s] officers to search for items that are unlikely to yield evidence of the crime." *Id.*

The warrant at issue is sufficiently particular because it delineates the categories of information subject to search and the alleged crimes to which the information must relate. The first specified category includes "[p]hotographs or videos as well as any messages . . . related to money laundering or narcotics offenses." Cellphone Warrant, ECF 77-1, Attachment B-3 ¶ 1. These items are squarely related to the crimes supported by probable cause in the affidavit. For example, the government had reason to believe that Ether had been communicating with Kim on the cellphone in advance of and during the meetings between Kim and undercover agents. *See* Rivera Aff. ¶ 16 (Ether telling the confidential source

---

[5] The motion also challenges the government's search of his other electronic devices, but the government represents that it has not searched any of Kim's electronic devices other than the white iPhone 11, and that it will not try to admit any evidence obtained from these other devices at trial. Accordingly, the motion is denied as moot as to these other devices, a disposition Kim does not resist in his reply brief.

7

that he was "talking to" Kim immediately prior to the first meeting); *id.* ¶ 19 (Ether updating the government's confidential source on Kim's arrival to the first meeting, texting that Kim was "arriving," "almost there," and, later, that he was "there now" "in the main entrance"); *id.* ¶ 23 (Ether texting the confidential source immediately after the first meeting confirming that the money transfer was complete, implying that Kim had told him so). Additionally, the confidential source had sent Ether a photo of the serial number on a dollar bill which, based on Agent Rivera's experience, would be passed on to Kim. *Id.* ¶ 16. Kim also used the phone to communicate with undercover agents about the meetings. *See id.* ¶ 21 (providing a transcript of October 5, 2020 recorded call between Kim and an undercover agent to locate each other at the meeting place); *id.* ¶ 29 (Kim and another undercover agent communicating over the phone about the October 16, 2020 meeting). Thus, the government had good reason to expect that messages and photos on Kim's phone could constitute evidence relevant to the specified offenses.[6] And because two other categories of searchable information relate directly to these messages and photos--the metadata revealing the dates, times, and locations associated with

---

[6] Kim complains that the warrant was overbroad in allowing a search of messages between him and people other than Ether. But the warrant's requirement that content subject to search had to relate to the offenses under investigation, discussed below, defeats this assertion of overbreadth.

the messages and photos, *see* Cellphone Warrant, Attachment B-3 ¶¶ 2, 3--those categories have a sufficient nexus to the crimes under investigation.

Kim takes particular issue with the warrant provision allowing for search of "[a]ny notes or other entries, including, but not limited to call records reflecting incoming and/or outgoing calls and/or text message logs . . . related to money laundering or narcotics offenses." *Id.* ¶ 4. Call records and text message logs were appropriate search targets for the same reasons as the messages discussed above. And the broader language "[a]ny notes or other entries" would reasonably be constrained by those more specific portions of this category. In any event, the government represents that it does not intend to admit any evidence obtained under the "[a]ny notes or other entries" language. *See* Resp., ECF 86 at 11 n.4.

Kim does not meaningfully challenge the remaining two categories of information, which concern contact information for co-conspirators "involved in money laundering or narcotics offenses" and information establishing Kim's ownership and control over the cellphone, as well as information as to the "method, means, and manner of the creation, conveyance or receipts" of the photos or messages at issue. Cellphone Warrant, Attachment B-3 ¶¶ 5, 6. These categories are sufficiently particular and related to the crimes for which the government had probable cause.

In addition to circumscribing the categories of information to be searched in these ways, the warrant specifies that it applies only to information related to the drug trafficking and money laundering offenses under 18 U.S.C. § 1956 and 21 U.S.C. §§ 841, 846 for which there was probable cause. Kim cites several out-of-circuit cases for the proposition that reference to broad criminal statutes does not "provide meaningful limits to narrow intrusive searches." Mot., ECF 77 at 10–11. While true that an "unadorned reference to broad federal statutes" may be insufficient, *United States v. Leary*, 846 F.2d 592, 602 (10th Cir. 1988), the warrant here both identifies the relevant statutes and describes the categories of information to be searched, as discussed above. *See United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018) (finding warrant satisfies particularity requirement where it "cabins the things being looked for by stating what crime is under investigation").

Kim further argues that the warrant's lack of a limiting time period renders it insufficiently particular. A time limitation is not a categorical requirement, but is a factor to consider in determining whether a warrant spells out the things subject to search. *See, e.g., id.* at 336 (upholding warrant despite lack of time limitation). Where it would be impossible for investigators to know how far back a subject's criminal conduct goes, a warrant that specifies the conduct under investigation in the affidavit

10

can satisfy the particularity requirement. *See United States v. Ford*, 184 F.3d 566, 578 (6th Cir. 1999) (concluding that "subject-matter limitation"--there "fruits and evidence of gambling"--of challenged warrant "fulfills the same function as a time limitation would have done, by limiting the warrant to evidence of the crimes described in the affidavit" (footnote omitted)). That is the case here. Agents had been investigating the money laundering networks for months. When Ether communicated with federal agents in early October 2020, he indicated that he already knew Kim, *see* Rivera Aff. ¶¶ 16, 19 (Ether referring to Kim as "my guy" and identifying Kim as Chinese), so it is difficult to see how they could have determined that his involvement began on a particular date. In view of the other limiting features of the warrant--including its description of particular categories of information and identification of the criminal statues at issue--the lack of a time period here does not violate the Fourth Amendment.

Finally, Kim suggests it was improper for the government to first sift through all the data on his cellphone before determining what data falls within the warrant's strictures. But this "two-step protocol," in which the government first seizes electronic data and then later searches it, is commonplace. *See In re Search of Recs., Info., & Data Associated with 14 Email Addresses Controlled by Google, LLC*, 438 F. Supp. 3d 771, 778-79 (E.D. Mich. 2020) (collecting cases); *see also* Fed. R. Crim. P. 41(e)(2)

11

Advisory Committee Note ("This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant."). This oft-used protocol poses no issue here.

C.

Kim also moves to suppress electronic messages from his cryptocurrency trading account with LocalBitcoins ("LBC"), which he argues were unlawfully obtained without a warrant. The government argues that the investigative acts at issue were extraterritorial, and the Fourth Amendment does not require a warrant for such searches and seizures. *See United States v. Stokes*, 726 F.3d 880, 893 (7th Cir. 2013) ("[T]he Fourth Amendment's warrant requirement, and by extension the strictures of the Warrant Clause, do not apply to extraterritorial searches by U.S. agents," even when concerning U.S. citizens). LBC is a foreign entity, apparently with no presence in the United States, and the Internal Revenue Service agent who received the chats from LBC did so by contacting an LBC representative in Finland. Because Kim says nothing about the government's extraterritoriality argument in his reply brief, and he does not argue that the search violated the Fourth Amendment's reasonableness requirement, I need go no further to conclude that no warrant was required for this search on the grounds that the search was extraterritorial.

12

Nor can the LBC chats be suppressed under the Stored Communications Act ("SCA") because suppression is not a remedy under that statute. As a general matter, the judge-made federal exclusionary rule, "which forbids the use of evidence obtained in violation of the Fourth or Fifth Amendments, does not extend to violations of statutes and regulations." *United States v. Kontny*, 238 F.3d 815, 818 (7th Cir. 2001). Because the SCA does not expressly provide for suppression, multiple courts, including the Seventh Circuit, have determined that suppression is unavailable. *See Huon v. Mudge*, 597 F. App'x 868, 875 (7th Cir. 2015) ("[I]f there was a violation of the Stored Communications Act . . ., suppression of the evidence would not have been an appropriate remedy" (citations omitted)); *United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014) ("[S]uppression is not a remedy for a violation of the Stored Communications Act."); *United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003) (same); *United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998) (same). Kim offers no argument for why suppression under the SCA would be appropriate here.[7]

---

[7] Kim also requests that, in the event I find the government did not need a warrant to search the LBC messages, I compel the government "to disclose sufficient material to ensure it complied with the SCA." Mot., ECF 78 at 15. He argues that this information could be material to supporting his motion to suppress these messages. Since I have concluded that suppression is not available under the SCA, and Kim offers no other reason why the requested information would aid in his defense, I deny this request.

13

II.

Other than the *Franks* hearing discussed above, Kim does not request an evidentiary hearing. Such a hearing is not necessary in any event since there are no disputed issues of material fact that would affect the outcome of these motions. *See United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007). For the foregoing reasons, Kim's motions to suppress are denied. His motions to dismiss certain counts of the superseding indictment, which has now itself been superseded, are denied as moot.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: December 14, 2023